# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

KC FILED
FEB 2 6 2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT
2-26-08

UNITED STATES OF AMERICA

v.

JOSE SANDOVAL, a/k/a "Meechi"

CRIMINAL COMPLAINT

CASE NUMBER:

# 08CR 0169

MAGISTRATE JUDGE COLE

I, the undersigned complainant being duly sworn, state the following is true and correct to the best of my knowledge and belief. On or about February 25, 2008, in Cook County, in the Northern District of Illinois, Eastern Division, defendant did,

knowingly possess with intent to distribute a controlled substance, namely in excess of 1 kilogram of mixtures and substances containing heroin, a Schedule I Narcotic Drug Controlled Substance,

in violation of Title 21, United States Code, Section 841(a)(1).

I further state that I am a Special Agent with the U.S. Drug Enforcement Administration, and that this complaint is based on the following facts:

See Attached Affidavit

Continued on the attached sheet and made a part hereof: _X_ Yes __ No

[signature]
Signature of Complainant

Sworn to before me and subscribed in my presence,

February 26, 2008     at 1:30 pm         Chicago, Illinois
Date                                      City and State

Jeffrey Cole, U.S. Magistrate Judge       [signature]
Name & Title of Judicial Officer           Signature of Judicial Officer

STATE OF ILLINOIS    )
                     )  SS
COUNTY OF COOK       )

## AFFIDAVIT

I, Patrick Humes, being duly sworn on oath, state as follows:

1.    I am employed as a Special Agent with the Drug Enforcement Administration and have been so employed for the past 18 years. I am currently assigned to the Drug Enforcement Administration (DEA) in Chicago, Illinois. I am authorized by federal law to enforce the federal Controlled Substance Act. My duties include the investigation of individuals who criminally violate the Controlled Substance Act under Title 21 of the United States Code. The information contained in this affidavit is based on my personal knowledge, information supplied to me by other law enforcement officers, information supplied by a confidential source and my review of certain documents and records.

2.    Since this affidavit is being submitted for the limited purpose of setting forth probable cause, I have not set forth each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are sufficient to establish probable cause that the individual named herein has committed a criminal offense in violation of Title 21 of the United States Criminal Code.

3.    On February 19, 2008, the CS met a person whom the CS knew as "Meechi." At the time of his arrest on February 25, 2008, "Meechi" identified himself as

1

JOSE SANDOVAL ("SANDOVAL"). According to the CS, SANDOVAL told the CS that SANDOVAL was capable of supplying large amounts of heroin. According to the CS, SANDOVAL gave the CS his phone number, (708) 698-6000, at the close of that meeting. According to the CS, the CS told SANDOVAL that he was interested in purchasing heroin from SANDOVAL in the future.

4. On the morning of February 20, 2008, at approximately 11:40 a.m., at the direction of DEA agents, the CS placed a recorded call to SANDOVAL at (708) 698-6000. During this call, the CS and SANDOVAL spoke in Spanish. According to the CS, the CS stated that SANDOVAL told the CS that he had a sample of heroin and the CS and SANDOVAL agreed to meet at the Walgreens located at Harlem Avenue and Cermak Road, in Berwyn, Illinois, in about twenty minutes.

5. A short time later on February 20, 2008, agents searched the CS and his vehicle for the presence of money and contraband with negative results. The CS was equipped with a consensual listening device. A short time later, DEA agents established surveillance at the Walgreen's Pharmacy, located at Harlem Avenue and Cermak Road, in Berwyn, Illinois. The CS then drove his vehicle to the parking lot of the Walgreens at Harlem and Cermak Road in Berwyn, Illinois.

6. At approximately noon on February 20, 2008, surveillance agents observed a 2002 black Chevrolet Envoy enter the parking lot of the Walgreens and park in the lot. The occupant of the vehicle exited and was observed to be a male, approximately 5'8"

tall, weighing approximately 160 pounds, dressed in jeans and a light brown jacket. This same individual was later identified at the time of his arrest as JOSE SANDOVAL. SANDOVAL walked to the CS's vehicle, entered, and sat into the front passenger seat. The CS and SANDOVAL spoke for approximately 10 minutes. During a portion of the recorded conversation which was translated by DEA Special Agent Lyons from the Spanish language, SANDOVAL stated "it's a sample...a little thing." According to the CS, SANDOVAL was referring to a small plastic bag which contained a sample of heroin that SANDOVAL provided to the CS during that meeting.

7.  According to Special Agent Sheila Lyons, the CS and SANDOVAL had the following additional conversation during this meeting, which Special Agent Lyons translated from Spanish. SANDOVAL stated, "it's always good with these guys...they are good for it" and "the quality is always good [or high]." The CS stated that they could "do business" if the stuff was of good quality. SANDOVAL agreed and added, "you just call me and I need one day to get it ready...with these guys." SANDOVAL added, "Well, maybe at most two [days] to make sure they have it." Before the end of the meeting, SANDOVAL stated that he was "going to see them...and going to see it" that day.

8.  After the meeting, DEA agents maintained constant surveillance of the CS and met the CS at a predetermined location. At that time, the CS gave agents a plastic bag, which contained a small pellet which appeared to be heroin that, according to the CS, SANDOVAL had given to the CS during the meeting. DEA agents immediately

transported this plastic bag for testing to the DEA North Central Laboratory. According to the North Central Laboratory, the substance in the form of a pellet in the package had an approximate net weight of 5.9 grams and registered at 73% pure heroin.

9. According to the CS, on February 22, 2008, at approximately 10:20 a.m., SANDOVAL called the CS and told the CS that SANDOVAL wanted to meet the CS at the same Walgreens. This telephone call was not recorded. According to the CS, the CS told SANDOVAL that the CS would meet SANDOVAL at the Walgreen's in approximately 30 minutes.

10. At approximately, 10:30 a.m. on February 22, 2008, DEA agents established surveillance at the Walgreens located at Harlem Avenue and Cermak Road, in Berwyn, Illinois 60402. Surveillance observed SANDOVAL get out of his car and enter the Walgreens. A short time later, at approximately, 11:00 a.m. the CS arrived in the parking lot. After the CS arrived, SANDOVAL walked out of the Walgreens store and got in the CS's car. During that meeting, which was recorded, the CS and SANDOVAL spoke in Spanish. According to Special Agent Sheila Lyons who listened to the recording, the CS told SANDOVAL that the sample was "very good"(translated) which the CS stated referred to the high quality and purity of the sample. The CS also stated that the CS would be ready to purchase two kilograms of the "same stuff" (translated) on the following Monday.

11. On the morning of February 25, 2008, the CS met with DEA agents.

4

Agents searched the CS and his vehicle for the presence of money and contraband with negative results. The CS was equipped with a consensual listening device.

12. At approximately, 11:00 a.m. on February 25, 2008, the CS placed a consensually recorded call to SANDOVAL. CS and SANDOVAL agreed to meet at a Circuit City near the intersection of Cermak and Harlem in Berwyn, Illinois.

13. Surveillance was established at that location and a short time later surveillance observed the CS arrive. Surveillance observed SANDOVAL arrive and get out of his vehicle. SANDOVAL got in the CS's vehicle and, according to the CS, SANDOVAL advised the CS that SANDOVAL would have to get the heroin in the area of 54th Street and 26th Street in Cicero, Illinois.

14. Agents established surveillance at 54th Street and 26th Street in Cicero, Illinois.

15. On the afternoon of February 25, 2008, at approximately 1:10 p.m., after the CS arrived near at 26th Street and 54th Avenue, Cicero, Illinois, agents observed SANDOVAL get into the CS's vehicle. The CS and SANDOVAL met and their conversation was recorded. During that meeting, according to Special Agent Lyons who listened to the conversation, SANDOVAL told the CS that they needed to go to 31st and St. Louis to get the "merchandise" (translated) which the CS understood to mean the heroin. The CS asked if "they" (by which the CS stated he was referring to SANDOVAL's source of supply) were ready to deliver or not. SANDOVAL assured the

5

CS that "no..it's good...it's there, they have it for me at 31Street and St. Louis...the corner of 31st and St. Louis." The CS agreed to drive SANDOVAL to 31st Street and St. Louis.

16. Surveillance agents observed the CS's vehicle as the CS drove SANDOVAL in the CS's vehicle to 31st Street and St. Louis in Chicago.

17. Surveillance agents observed the CS's vehicle park in the 3000 south block of St. Louis. Surveillance observed SANDOVAL exit the CS's vehicle and walk into the gangway of 3042 South St. Louis. SANDOVAL walked to the side entrance of the residence. Between, approximately 7 and 10 minutes later, SANDOVAL exited the same gangway. SANDOVAL re-entered the CS's vehicle and the CS gave a prearranged arrest signal. Agents arrested SANDOVAL at the CS's vehicle a short distance from 3042 South St. Louis in Chicago.

18. Agents seized two rectangular, grey packages, which were wrapped in duct tape, from the front waistband of SANDOVAL. The packages were weighed and tested for the presence of narcotics. The two packages weighed approximately 2,111 grams, including the packaging, and tested positive for the presence of heroin.

19. Agents advised SANDOVAL of his Constitutional rights at approximately 1:45 p.m. in the Spanish language. SANDOVAL orally waived his rights and agreed to give a statement to agents. Upon being interviewed in the Spanish language, SANDOVAL stated, among other things, the following. SANDOVAL knew that the two packages seized from his waistband at the time of his arrest, contained heroin.

SANDOVAL stated this was his first drug deal and stated that he "needed the money" (translated) and was just trying "to get ahead a little" (translated). SANDOVAL stated he was going to be paid $2,000 per kilogram of heroin delivered. SANDOVAL again stated he only delivered the heroin to make money.

FURTHER AFFIANT SAYETH NOT.

_____
Patrick Humes
Special Agent, DEA

Subscribed and sworn to before me,
This 26th day of February 2008

_____
U.S. Magistrate Judge Jeffrey Cole

7